All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is now open for subpoena to adjournment. The Honorable Michael J. Burke, presiding. Please be seated. Harmonics and first case of the morning. Call 312-4817. People of the State of Illinois v. Deon Spears. On behalf of Mr. Spears, Jack L. O'Brien. On behalf of the people, Mr. David E. Manchin. Thank you, Mr. O'Brien. You may proceed. Thank you. May it please the Court. My name is Jack L. O'Brien and I'm representing Mr. Spears in this matter. As far as the reasonable doubt argument, rather than go through all the arguments that I made in the briefs, I would just like to rely on the briefs for that argument and move straight to the severance issue unless there's any questions about that. That evidence here that we're talking about is the 9mm gun and the cocaine. Now, the 9mm gun, that was not the gun that was used in the murder. That was the gun that was found in the defendant's pocket after the murder had occurred. He ran across the street, was hit by a car. The paramedics found in his pocket that 9mm gun and that was not the murder weapon. Because it wasn't the murder weapon and because that evidence is obviously highly prejudicial to the defendant, including the cocaine, the defendant moved to sever. And the Court allowed the State to prove up the armed violence, which would have included that evidence, because the State wanted that evidence to prove identity when it was coupled with this double-breasted statement. Let me ask you something, Mr. Hildebrand, before you go on. Do you feel that you preserved that issue in your pretrial motions? Not in the traditional way you're supposed to, and that's why I raised it as plain error. And plain error is just a guide for the Court to determine what issues it's going to excuse waiver and forfeiture. And so that's why I raised it as plain error. You would agree that the test is whether it's the same comprehensive transaction, correct? Yes, that's what the statute says, and that's the starting point. And for the motion to sever, it just says, you know, if joined or even proper, the Court is permitted to separate them out if it's going to prejudice one of the parties, either the defendant or the State. And the first factor in that is the, you know, proximity of time and place. You would agree that that weighs against your argument here, correct? No. I mean, that's one of the... It didn't take place in the same time and place. He wasn't possessing the gun and the firearm at the time that the shooting took place? Well, yes, he did. He did. So that is one of the factors that courts look to to determine whether it's part of the same comprehensive transaction, correct? But that it happened so closely does not really affect the prejudice that's going to be caused by this. Well, but it's one of the factors the Court has to look to. Oh, sure. I would absolutely agree with that. All right. And? Well, let's start off with this identity thing, because identity was not squarely at issue here. Well, who identified, I mean, who identified the... Identified the defendant as a person sitting in the front seat holding the murder weapon? But he didn't, he couldn't identify him in the courtroom. No, because he could not see his face. He didn't identify him in the courtroom. But if we accept Baldo's testimony, that was a defendant. He was sitting there. Joe came over, grabbed him. He ran across the street, got hit by the car. But that's all circumstantial evidence, is it not? Correct. Okay. And the State's burden of proof, we all know, is beyond a reasonable doubt. Absolutely. That's a pretty heavy burden of proof. Absolutely. Okay. Especially where the witness, Baldo, actually misidentified the defendant. I mean, he was presenting a lineup and he picked the wrong person. Yes, because he didn't see his face. He says he's got a hood on, but that is the guy. He was absolutely certain that's the guy. The guy that was in the car. In the car. Subsequently got hit. Holding the gun. That's the guy I took the gun from. Correct. The guy who got hit. Correct. Okay. And I don't believe even the defense counsel ever made an argument that he misidentified him. His argument basically was, you can't believe that. This evidence is so contradictory and so unbelievable that we don't know what happened. So all the more reason why his lying in the middle of the street should be admissible and is as relevant and close in time. No. This evidence, and I'll explain why I believe that. But let's start with the identity. It's not like the defendant ran across the street and got away. And then he's picked up two weeks later and he says, hey, I wasn't there. Why are you picking on me? That is important because when the state wants to bring this evidence in, it's for identity. And we know that he's there. Now, if you want to gauge how relevant and how important this evidence was, how probative this evidence was, just look at the state's closing argument. In closing argument, besides arguing propensity using that evidence, the only time they really used it was on page 1312 to explain why the defendant had the 9mm gun in his pocket. The state says they found a 9mm gun in his pocket and that goes along with his statement that he's double-breasted. That's it? That's this highly probative, highly necessary evidence that they need to bring in and that's their argument? That's how it's used? How important is that? How probative is that? And really, that argument really shows what this evidence is really all about. This evidence, the probative value of this evidence is to, it's like an evidence to rebut an anticipatory defense that a defendant would make in this situation where, hey, it's not me. I have my gun in my pocket. My 9mm is in my pocket. It was not used in the murder and it's not me. It was somebody else's gun and they used it. Here's my gun in my pocket. So that's the probative value of this evidence, to keep the defendant from making that argument. And even if the defendant doesn't make that argument, which he didn't in this case, if he doesn't make it, the jury could infer that if nobody says anything. Wait, now, the defendant's pocket has his gun. Well, it's somebody else's gun that did it because that's not the murder one. So once this evidence came in, this cocaine and 9mm evidence came in, then the state had to bring in this double-breasted statement to show that, you know, well, the reason why is because it's double-breasted. And that's the only thing that they argued. Where's the identity? Where's his probative evidence to prove guilt? Nothing. They used it for that, which they had to because they forced this in by objecting to the motion to sever. They objected. So they forced this in. And by forcing it in, now they had to rebut it. So it didn't link him to the crime at all? No, no. That's my question. You're saying there's absolutely zero probative value. I believe there is probative value of it. But it's so small. And the prejudicial effect is so large. I mean, clearly it's probative. But just a tiny bit. I'm sorry. Go ahead. I interrupted you. And if you want to look at the probative value, like I said, look how it was used. It wasn't used to prove anything. But this would have been admissible other crimes evidence even if the case had been, if these charges had been severed, correct? No, I don't know how it would. Well, again, on the issue of identity, and that's one of the things that a court would look to. Yes, and a court is, I would agree with that. And I would say that it would have been an abuse of discretion to allow it in because it really doesn't go to identity. Well, but the testimony was that this defendant several days or sometime before this murder made the statement, I, I've forgotten the verb, but anyway, go or travel double-breasted. Right. So it was this defendant who made that statement. So how could it not go to identity? Well, because, well, let's say that, let's just agree for the moment that the state witnesses were lying. And that's why their testimony is all modulated. And they're not believable. Really, what is the evidence of the double-breasted? That doesn't really prove anything. It just proves that he carried two weapons and that one of his weapons is now missing. Right. So if it really doesn't, it doesn't prove identity like Ibalo's testimony, but if that's not believable, then this testimony turns into other kinds of evidence to, like, bolster the credibility of an unbelievable witness. But in and of itself, it doesn't prove really anything substantial in this case except to explain why he would have a 9mm. And where's his other gun? Well, that's the murder weapon. According to Randy Clark, that's a different witness. That's not the double-breasted testimony. Do you think the state could have proven I.D. that this defendant who was lying in the middle of the street certainly is the same defendant that jumped out of the car and ran and got hit? Do you think the state could have proved I.D. without the admission of the gun and the coke? Absolutely, they did. So the gun and the coke weren't necessary in order to prove I.D.? That's your position? And that's what the state did. They didn't use this to prove I.D. They proved it to make the defendant look like a real bad person. They used it as propensity evidence. They didn't even use it. The only time they used it was to explain why he would have a 9mm, which they had to do because they had to rebut that inference that the jury could make once it came in. So we can argue all we want about how probative it was. Actually, how probative was it to the state? How necessary was it? And other crimes evidence, Your Honor, doesn't come in to prove something without the court first looking at what other evidence do you have to prove it? And they had Abago Martinez, Joseph Martinez, and all the other evidence, the gun residue, this character Randy Clark saying that that was the defendant's gun. What? That is extreme. If believed, that is extremely probative of identity. And then you're going to let the state bring this in so they can make what argument? But, again, I think it depends on how you look at the case. There was no direct, no testimony from anyone who said the person in the car is the same person who's sitting in the court, who is the same person who shot the victim, who then got run over by the car, and who's now sitting in the courtroom at counsel table dressed in red. So it's circumstantial versus direct evidence. Well, I think it's direct evidence. Abago's testimony is direct evidence that the guy he claims he saw was the guy in the street. Whether he's telling the truth or not, I don't know. All I know is, based on the evidence, we can't tell what happened. And when you can't tell what happened, that's what I'm basically raising my reasonable doubt argument. Same clothes, same boxer underwear? Yeah, and he kept size on him. This is the guy. And then Joseph comes over, and Joseph grabs the guy that's sitting exactly the same guy that Abago says he took the gun from. And Joe says, I grabbed him because he wasn't paying attention to Abago. And they fight on the ground. He tasers him. Joe's beating him. The defendant gets through the car. He runs across the street, and he gets hit by a car. And then they have absolutely no doubt that is the same guy. That's exactly the same guy. So it's a little Monday morning quarterbacking, though. I mean, you're looking at the evidence that was adduced at trial. And now we're actually trying to figure out whether or not the trial court abused its discretion in allowing this in at a pretrial motion to eliminate. I'm sure a lot of this was told to the court, but the court doesn't know what's going to come in at trial. So the court is going to make a decision based upon whether or not, you know, based upon the factors in Walston and some of these other things as to whether or not the court's going to sever. And we've already talked about the first factor, which is the most helpful factor, which is time and place. The second factor has to do with evidence that links the second offense to the first offense. And you can see it, albeit by saying that you believe it's minimal, but there is some evidence linking the second offense to the first offense. Would you agree? Some evidence? Yes, if you wind it through, yes. I mean, there's no question. I mean, almost everything is probative and relevant in these types of situations. And if the court did make a correct decision on this and it comes out that the defendant was denied a fair trial because of it, it doesn't matter. Because we're really concerned with was this a fair trial? Did we get a fair determination of the guilt? Well, that's a good question. I mean, I want to talk to you about common scheme as well. We're going through these factors. But say we go through the factors and we find, okay, maybe the court erred in allowing this in. Then we have to look at harmless error, don't we? Sure. Absolutely. Don't you? And that would be my burden. I would have to prove that the defendant was prejudiced by saying that the case was denied. Since your time is up, then briefly let's talk about harmless error. The evidence that came in against your client, sufficient evidence for finding guilty beyond a reasonable doubt without this gun testimony? I know you disagree. With or without. I would have changed my argument on it because, well, I argued reasonable doubt with the evidence. But you also just argued in response to my question that certainly you could tell it was him. It was the same guy that they struggled to the ground that was lying in the middle of the street. So there really isn't an issue as to I.D. as you submitted. So how is there not sufficient evidence to find him guilty beyond a reasonable doubt? I'm sorry to interrupt you, but I'm agreeing that you accept that as the truth. It's identification of the defendant to the exclusion of everybody else in the world that committed this murder. But when we review testimony, we have to review how consistent it is with the evidence, how probable it is, and take all that into consideration. Because if testimony is so inconsistent and so improbable that it can't support the conviction, then we have to reverse it. If we accept their testimony at face value, yes, that is an identification. Does that answer the question? Sure. Thank you. All right. Counsel, if you would. Morning, Your Honor. Excuse me. Excuse us one second. Do you think maybe it's better than he'd have an opportunity to reply to that? Maybe we ought to do that and give him some extra time. If you could just hold that, Mr. Manchin. Mr. Holdenbrown, we do have just a couple questions on the 11510.1. We don't want to keep you up here too much past your time, but you first made a foundational argument. And my question on that is, does the state have to walk this person through every single statement that the person made when the person testifies that he doesn't remember making the statement? I would say that not every single one. Let's say you have a statement, there's 500 statements. Of course, they don't have to go through it. But what they do have to do is at least condense and summarize what do we want out of this. Did you tell the police that the defendant said he's going to take his brand-new car, set it on fire, and drop it off a cliff? Oh, yeah. All right. Yeah. You can summarize it, but you have to at least confirm. I mean, there's a reason for it. Didn't they do that? No, they just said, do you remember going to the police station? No. Do you remember making a statement? No. But the purpose of confronting them with the actual statement serves a purpose. They went a little further than that, too, didn't they? A little bit. No, I mean, I suggested what they do is show a picture of the gun. Have you ever seen this gun before? You know, did you ever say that this was the defendant's gun? Here's what they were asked. The prosecutor asked the witness, after asking about the date, the time, going to the police station, meeting with the police, he said, now they, being the police, talked to you about a shooting that occurred at La Movida. I don't remember. That's not enough? To call attention to the basics of the statement, say, hey, you talked to the police on this date. I don't remember. And the police talked to you on this date about a shooting that occurred at this particular location. I don't remember. Now they've got to go further than that and show them the gun? Sure. That's what they want, right? They want him to ID the gun. That's the defendant. That's what they want. That's the only thing that they want. Why didn't they ask him that? Well, doesn't the Flores case say that if you claim memory loss that they don't need to go through? That's a perfect thing to bring up because isn't that why we're required to ask the specific question? Because it's like refreshing a memory. You could ask somebody, do you remember making a statement like this stupid car thing that I brought up? Do you remember making a statement to the police about anything, the deal with the defendant and his car? No. I don't remember going to the police station. I don't remember ever talking to anybody about anything. They go, well, what about this thing about the defendant telling you that he was going to take his brand-new car and set it up? Oh, yes. That's right. In this case, I think, wasn't it clear that this individual, nobody was refreshing his recollection. He claimed a total memory loss no matter what they said to him was not going to, quote-unquote, refresh his recollection, which is not required in this situation. Right. You don't have any authority that indicates they have to ask all the questions you indicated. No, and I would never even suggest it. Just ask what do you want from him and confront him with that. I mean, if he's saying, I don't remember, I don't remember, I don't remember, and he's probably going to deny everything. Right. That was inconsistent with his statement, wasn't it? Yes, but that is not the rule. The rule isn't if it looks like he's going to deny everything, then skip the foundation and carry on from there. You're not supposed to do that. You're supposed to confront him with the actual statement in case it refreshes his recollection. You're not supposed to prejudge it. They should have just come out and said, you know, forget all that. Did you tell, have you ever seen this gun before? Now he's looking, granted, he's probably going to say no, but we don't know that, and that's not the rule. To make a judgment call on your own, oh, he's just going to deny it all. No, follow the rules. Now, if this case is sent back for a new trial, that's what this case should do, confront him with, have you ever seen that gun before? Didn't you tell Officer so-and-so that you had seen that gun and that you had seen that gun in the defendant's possession a week before? All right, thank you, Counsel. You all have time for rebuttal. Mr. Manchin, sorry to make you get your work out in early, but, you know, first of all, Mr. Manchin, I just noticed yesterday that you come from Springfield. Correct. And normally what we try and do when we have people coming from Springfield or the 5th District is to set their orals later in the day. So if you ever get another notice or someone in your office for an 830 oral argument, call Mr. Manchin and say, you know, is it okay if we make it a little bit later? Because, you know. Well, I've just got to stay at a hotel. We always try and make that a policy here. So just for the future. That's right. All right, you may proceed. He had a nice vacation in Alabama. Yeah. I was almost worried that I was not going to make it this year because of the 10-inch threat of snow. Well, thanks for making the arrangements to be here around the time. We appreciate it. Now, with request to both of the issues that are argued today is the question of abuse of discretion on the part of the trial court. And the standard for abuse of discretion is the trial court's decision arbitrary or would no reasonable person agree with the view taken by the trial court. And I think with both regard to the joinder and the admission of the taped statement, the trial court's decision was not abuse of discretion. Let's get right into these factors in Walston. I mean, how is there a common scheme here between the shooting and the gun and cocaine in the guy's possession? Well, it's part of a continuing narrative of all the events that have happened. It does go towards the identification. Defendant himself admits it goes somewhat to it but says it's not very probative. But that is not the test. It's not how probative is this. It's not the probative or how probative this goes to the weight of the evidence once in. It does not go to the question of should they be tried together. But the test isn't is it part of a common narrative? Is it part of a common scheme or a criminal endeavor? That's different, is it not? Well, there is a difference, but they have used the common continuing narrative as a means of saying it is part of a common scheme or part of the. Well, what's the common thread? The common thread is the identity of the defendant. We have this defendant who is shown in possession of the murder weapon sometime before the murder. We have him on the day or the day before the murder saying I generally carry two guns in effect. Then you have this guy that's running from the scene after the shooting and gets hit by a car and has a gun on him and has had one gun taken away from him. But couldn't you identify, I mean, how is there any better identification testimony than the same guy jumping out of the car running, I don't know, 10 feet across the street and getting hit by a car? Everybody has their eyes on him. Everyone knows it's the same guy that was in the car. He has on the same clothes. He's on the same boxer shorts. His pants are hanging down. So when they get him in the ambulance, it's the same guy. How could you not identify him? How could he not be identified without bringing in those weapons and without bringing in that cocaine? Doesn't the prejudicial effect outweigh the probative value in that case? I don't believe it does because I think this would clearly fall under the harmless error rubric. Because if you leave out this evidence, the evidence is still overwhelming. I think that this is, in fact, the defendant who is guilty of this murder. So you concede that it was improperly admitted. If it was improperly admitted, there would simply be no prejudice to the defendant because, as you say, this is the same guy that ran from the car that they took the gun away from that was seen arguing with the defendant. The defendant was identified as being at that car and arguing with the victim, shown to have the gunshot residue on his hands. So then why bring in the gun and the cocaine? Well, you also have to look at it from the viewpoint of the armed violence and cocaine as far as establishing that one. Because you have the defendant there. Why were the police there? How did they come to discover the gun on him? So you have to get this information as far as what led up to that to get the police there on the scene to get the gun discovered as far as the person being arrested. Which is all the more reason to sever, correct? Well, then what you have is you have some of the same evidence coming in in both trials. Well, the defendant is entitled to a fair trial, as counsel indicated. And if this is so prejudicial that it would outweigh any probative value, then? I don't believe it does outweigh any probative value. The linkage there between being double-breasted, having two guns, could it be done without? Yes, but that is not the test. Well, what about the possession? That is also not the test for joiner. Could you do this separately? It's just are there sufficient interconnections that having a joint trial in this makes sense? But certainly not for the possession of the controlled substance as a separate charge. I mean, how is that linked? You're correct that the reference to the drugs is probably not linked because there's no reference to the defendant saying, I always carry two guns to protect my drugs or anything like that. Both charges, armed violence and possession of cocaine, had as an element possession of the drugs, correct? Correct. So assuming that you're correct that the weapon would have come in to prove some identity or some evidence of identity, why weren't the charges severed and then the court could still let the gun come in but keep the cocaine out? Because the cocaine is the centerpiece of both charges, and now we're talking about severing charges. Why weren't the charges severed? Well, one thing is that the defendant never tried to sever just, okay, if we're not going to sever the second gun, let's just sever out just the drugs by itself. He went on the all or nothing thing. We either keep it all out or none. Either it all comes in or it all goes out. And I think the defendant should be held to having made that choice. It was either an all or nothing. He did not try to say, okay, let's go ahead and let the second gun come in because it does have some provocative value, but let's keep out the reference to the drugs by itself. Well, isn't the court the gatekeeper of that evidence? I mean, isn't that a decision that the court should have made regardless of what the defendant was proposing or what the state was proposing? It's something the trial court could have done or that he's required to do. I do not know. I think that he considered the factors that are involved, the closest of time and place, what provocative value was, the fact that this whole thing is intercommingled and said, okay, I think this is close enough that it should be a joint trial is proper. Let me ask you this question. If they would have severed or if they would have said, well, we're going to go on the gun charge and the cocaine charge, would the murder have come in? I think it would have because you would have to have the set up. If you don't, how is the guy there? Why are the police in that place in the first place? How do you get to the gun? How do you find the gun? How do you deal with this guy saying, hey, somebody planted the gun on me? Maybe a motion in limine, motion in limine saying we'll stipulate that there was an offense that he was running from and then take it from there. I mean, would that have necessarily had to come in in order to tie the three crimes together? I think as closely linked as they were, it would have been very difficult to try to completely try these two cases without any reference to, or especially with respect to the armed violence drug war, without any references to what happened before that. It would be very hard to try to prove it without setting the scene for why everybody was there, how the gun was discovered, how the guy happened to be hit by the car so that they were treating him. Now, with respect to the statement of Randy Clark, the defendant did not object at trial to the lack of any foundation and did not object to the lack of any line-by-line questioning. Did you say this? Did you say this? Is this the gun? His only objection was there was no inconsistency. Randy Clark's statement, other than testifying to this double-breasted issue, what else did he state? It was Luella that had the double-breasted. Right, right. Randy Clark was the one that said the defendant had this murder weapon several days before the offense. I stand corrected. Right. The tape on it. Yes. Okay. Thank you. And that clearly would be the defense's admission that he bought this gun and happened to be this witness putting the murder weapon in the defendant's hands a few days before the offense is clearly relevant to whether the defense guilty of the murder itself. And you disagree with counsel that where there's memory loss, you still have to ask many, many detailed questions? I don't think so. I think that what they did here was perfectly fine. When you have a witness like this, that every single question is, I don't remember, that it is perfectly fine to just say, on this date and time, did you go to the police station? Did you talk to these police officers? Did you talk about a shooting at this particular location? That is enough to confront the witness with a statement to establish a foundation for 11510. How do you distinguish Grayson that the defense relies upon? I've got to remember which one was Bryce. Grayson, where the witness indicated he listened to the 911 call? Well, I'm going to have to admit that I don't remember the details of Grayson. Let me have a second. Well, in that case, the witness was not asked a single question about the statement. About any inconsistencies? About any inconsistencies. They played the tape and asked if it was his voice. They had asked no foundation questions at all, which is the distinction between here, where he was asked, did you talk to these particular officers on a particular date and time? So I think that is the distinction. In Grayson, all they did was play the tape and said, is that your voice? They did not ask any questions to set up when was that phone call made or anything like that. I think that's the main distinction between the two cases. Would you agree that there are parts of Clark's statements that were not based upon his personal knowledge? The one part, I think, is his statement that the defendant was hit as he ran from the scene by a particular person. What about the statements attributable to the defendant that he had this gun before? I'm sorry, that he had the second weapon, he possessed a .44 or whatever he said, and that he bought the Colt for $40? Well, I think that those statements are within his personal knowledge. They're admissions on the part of the defendant. Yeah, but that theory has been totally, I mean, the case law says no to that. Citing Steinman's article, who wrote 11510.1, and also, 11510.1 was based upon an article by Professor Lefebvre, and Professor Lefebvre and Steinman both said, no, it has to be, it's not just that you know that the defendant made a statement, it's that you have to have personal knowledge of exactly what was said in the statement. So that argument has been adopted by any court. But, yes, again, the defendant did not object on the basis of not part of personal knowledge, and I think that the parts that were beyond his personal knowledge, the name of the person that hit him in the car, and this reference to the buying the gun, it does go to, you also have the fact that you have this witness on the stand testifying, I don't even know the defendant. So that if you have him having a conversation with the defendant relating to the conversation, that that goes to the inconsistency of the statement. I think it also goes to how much prejudice is there to this portion of the statement that he bought the gun for $40. I submit to that part, as far as that portion of the statement, that the prejudice is minimal if nonexistent. How about ineffective assistance of counsel? Why is counsel not ineffective for allowing these statements in that technically don't fall under 11510? Well, it's interesting the defendant brings up ineffective assistance of counsel in a reply brief, and the general rule is you can't bring up anything in a reply brief if you did not bring up in your original. So I question whether or not the ineffective assistance is even proper before this court. Plus, the test for ineffective assistance of counsel is with counsel's representation as a whole ineffective. You don't just pick out one isolated incident or one isolated thing and say, okay, this was wrong, therefore he is incompetent. You have to look at the whole body of work of the attorney in this case, and I think if you take a look at the whole body of work of what this attorney attempted to do, that he cannot declare ineffective for not objecting to the specific portions of the tape that were beyond his personal knowledge. Now, if it was error for the trial court to admit these few parts of it, was it plain error? Did it rise to the level of plain error? I don't believe it does rise to the level of plain error. And you don't think the evidence then was closely balanced? No, I do not believe that it was closely balanced. I think the evidence of the guilt was overwhelming. And the two things that were beyond his knowledge was that the defendant was hit by a particular person. In this case, it was undisputed that the defendant was hit by a car as he ran from the scene. So that statement adds nothing or subtracts nothing to the case. So that one could not have resulted in any prejudice to the defendant. Then the second one that's beyond his knowledge is the defendant's statement, I bought the gun for $40. You have the witness placing the gun in the defendant's hands, and then you have the defendant with the gun taken away from him at the scene and the gunshot residue on his hands. So that leaving out the adding the $40 purchase price really does not add that much prejudice to the defendant. Can I make one further comment? As regards to the relevancy or the admissibility of the 9mm, I note that on appeal the defendant repeatedly states that his possession of the 9mm proves that he didn't possess the .38 revolver. So the defendant himself sees the 9mm as relevant, which I think does bear upon the question whether the trial court was correct in his decision. Thank you, Counsel. Thank you, Your Honor. Mr. Hildebrand? Thank you. Maybe you could start off with the last comment that counsel made. You do argue, I believe when you're arguing sufficiency of the evidence, that it doesn't make a lot of sense for the defendant to have used one gun and possessed another gun, or you made some argument about that. So how is it? You're kind of making the argument that you said that the trial court or the prosecutor may have foreseen a defense attorney making. Right. Specifically what counsel just said, I never made that argument. And the only reason that that is an issue now is because that was forced into the trial with a gun. What I said was the gun, if he's got two guns, why would somebody carry a completely defaced gun and a regular gun? That was it. Doesn't that call into question, doesn't that make it relevant then about these guns, about the two guns? I mean, we have to deal with two guns because that was forced into the trial because the judge didn't sever. So once it's there, it's like they forced the two guns in, so any time I comment on the two guns now means that it should come in. And that wasn't my argument. I didn't argue that he couldn't have been the guy because he had two guns. I'm just questioning the reliability of Llewellyn. I mean, really, look at Llewellyn's statement. That was my question. Other than the double-breasted, what did Llewellyn's testimony add to the trial? A lot of highly prejudicial propensity evidence, and that's how they used it. And if you look at the state's own argument on appeal, their reasonable doubt argument, they say this case, this was proved, clearly proved. Not once did they mention the reasonable doubt, I mean, the double-breasted 9-millimeter evidence. They said this case was proved on the evidence of Smith, the Martinez brothers, the gun residue, and Randy Clark's statement. Not once did they mention this highly probative, which they claimed, evidence. The only time they mentioned it was to rebut my argument about, well, if he's got two guns, that doesn't make sense. And that was it. That's not identity. That's nothing. That's to rebut my argument. So why is that improper, to rebut your argument? Because I shouldn't be rebutting it, because it shouldn't be in evidence, because it denied him a fair trial to bring in a 9-millimeter in cocaine. But once it's brought in, then I have to deal with that. And it's totally, I mean, I still don't understand this identity connection, besides the state saying, we need it to prove identity. Well, saying I need it to prove identity doesn't really tell me what it is. I mean, if Allen's testimony is to prove identity, then basically, then the defendant has to be the killer because he had a 9-millimeter pocket in his pocket that wasn't a murder weapon. But he said that he stays double-breasted. So why are you using, and he said it was a joke. He said that was a joke. Why are we using a joke to convict somebody of murder? And if it's a joke, how does that substitute for real hard evidence, real reliable evidence that he had a gun on the night in question? I mean, if you really want to break down the Weldon statement, it was maybe because he had a cast on his hand, and they were kidding him about, oh, you're going to get beat up. Well, I'll be double-breasted. Well, so he doesn't have a cast on his hand on the night of the murder. So that double-breasted doesn't even relate to that. Then he says he has two guns when he's got the cast on. Prior to Llewellyn's testimony, would you submit, and I know you're not going to admit to anything, but would you submit that there certainly was, that the state put on sufficient evidence with respect to I.D. without ever putting Llewellyn on? They, I mean, like I said before, they clearly established identification through their other witnesses. I mean, there's really no question that if that's what he saw and if he's telling the truth, then he's got it right. And defense counsel didn't even argue that this is some kind of misidentification. He argued the same thing I argued, that their testimony is so unbelievable that we can't believe that. And so now we're going to base the conviction on the defendant a couple days beforehand telling a joke? I mean, that's not evidence. But it's up to the jury to decide what weight to give that, is it not? That's right. That's right. And that's why we have to weigh the probative value versus the prejudicial effect. And like I say, if you want to gauge on how important this evidence was to the state, just look at how they used it in trial and look how the state used it on appeal. They didn't even use it. They only used it to eventually rebut my argument about, well, you know, if he had these two guns, it doesn't seem, it doesn't really add up. It won't keep the face. But if you look at their argument, they're relying on everything except that. If it's so probative, why isn't it a prominent feature of the trial? Why isn't it a prominent feature of the appeal? And we still don't know exactly identity of what. Identity of him as the killer? Identity of him as being there? Identity of him as the guy in the front seat holding the gun? The identity of him being in the SUV? Identity of what? We're never told. It was only necessary to prove the armed violence offense, wasn't it? To prove murder? No, the armed violence offense. Pardon me? I'm not following. The subsequent offense, the coke and the armed violence, was Llewellyn's testimony relevant for that? If they were charging him with armed violence, they have him with a weapon and with the cocaine. They just bring in the paramedic. So you say there's plenty of evidence from Ubaldo and these other people that your client possessed that coke? Right, and if we don't believe that. So what's the prejudicial effect of him possessing another gun, separate apart from the cocaine? What's the great prejudice that the jury's going to say, oh, he had another gun? Wow. I'm not talking about the cocaine. I'm not talking about the charges of armed violence, which, again, that's a separate issue, and that's what we're talking about. That's a separate issue. But we keep bleeding into this issue of other crimes evidence and whether or not that would have been admissible standing alone on the issue of identity. So tell me the prejudice of him having another gun. That is a great question because that's why this is so confusing, because we wrap it up in it. The reason why it's confusing is because the fed is claiming I didn't do that. I'm taking it. I am not guilty until proven beyond response. I'm not guilty. I'm taking this trial. He's not.  So, right, of the murder. And so if they don't, if the jury doesn't believe that he didn't have the colt, then the jury's not going to think, well, what's the big deal about him having a 9mm? Well, the big deal is that he would have no gun at all. I mean, you're assuming that he had the murder weapon seconds after the shooting. That's why it's prejudicial. We want to determine who shot Mr. Bay. How does that prove it? And that's a joke. That's proving his guilt based on a joke. It's extremely prejudicial. I don't know one person in my life, in my entire life, that ever carried a gun. And I don't know anybody who carried a gun and cocaine. I mean, if a juror's sitting there and they hear that, this is a bad person. And that's why we keep it out. How probative was this? How did the state really need this? Just look at their case. How did they use it? They didn't use it to prove their case. They used it as propensity. The prosecutor tells the jury that that 9mm was loaded, fully loaded. How does that relate to why this was supposedly? That's just propensity. That's just making the defendant look bad. And we have to look at the probative versus the prejudicial. And the probative is reflected in their case. All right. We would like to thank the attorneys for their arguments today. The case will be taken under advisement, and we will stand in recess.